438

Rosetta Harris, Plaintiff-Appellant, *v*. The City of Edwardsville, Defendant-Appellee.

(No. 72-245;

Fifth District—May 21, 1973.

Edward L. Welch, of Edwardsville, for appellant.

No brief filed for appellee.

PER CURIAM:

Appeal from a judgment of the Circuit Court of Madison County in favor of the defendant, City of Edwardsville, Illinois. The plaintiff, Rosetta Harris, brought this action to recover the one-half time of the

allegedly time and a half due to her for work performed in excess of the 40-hour week.

Hereinafter, the plaintiff-appellant, Rosetta Harris, shall be called the plaintiff and the defendant-appellee, City of Edwardsville, shall be called the City.

This action was filed by the plaintiff seeking the overtime wage in a two count complaint. The first count of the complaint was based on allegation that the plaintiff was entitled to recover because the employment agreement "must be construed to include the customary additional rate of pay for overtime work paid to all other employees of the City of Edwardsville, Illinois, during the period  *  *  *". The second count was based upon denial of the equal protection clause of the fourteenth amendment to the U.S. Constitution because she was not paid on the basis as others in the same very general capacity. The City answered by way of a general denial.

Trial was held to the court and at the conclusion, the court, after taking the matter under advisement for a period of almost five months, entered judgment against the plaintiff and in favor of the City.

The facts are not basically in dispute. It is agreed that the plaintiff worked for the City in the police department as a clerk-dispatcher. She started work on the 4:00 P.M. to 12:00 A.M. shift in June, 1965, and in May, 1966, she not only worked the 4 to 12 shift, but also worked the 8:00 A.M. to 4:00 P.M. shift. Thus she performed the 16 hour, five day a week double shift until August 1968. She received pay for the double shift at the regular rate, but did not receive time and a half for the second shift.

The plaintiff did not make demand or expect "overtime" pay until July 31, 1968, when she apparently discovered that others employed by the City in clerical positions were receiving time and a half for "overtime".

The parties have agreed that the number of hours worked by the plaintiffs is at least the number of hours stated in the plaintiff's complaint, i.e., 2480 hours. The City stipulated the number of hours to be 2600 at a rate of pay of $1.59 per hour.

There is a dispute as to whether the plaintiff was requested to work the extra shift. The record is clear that she was willing to and desirous of working the second shift. The record is also quite clear that during the period of the plaintiff's employment she was considered a valuable employee and her supervisors said that she was happy with her job.

The record further clearly indicates that the plaintiff did not expect to receive time and a half until she discovered others in the City Clerk's office were so paid. Further, it is clear from the record that in the City, employees covered by union contract received time and a half for over-

time, as did those working in the City Clerk's office. However, the record is also clear that no employee of the City's police department received overtime pay.

The plaintiff contends that she was not paid overtime because the City's former Mayor was prejudiced against Mrs. Harris' race. Mrs. Harris bases this contention on an occurrence which took place prior to her having been employed by the City. The plaintiff alleged that the Mayor, then an official with the Boy Scouts, refused to get one of the plaintiff's children into scouting because of his race. The child was able to become a scout due to the efforts of another individual. Other than this single allegation, the record is without any evidence of discrimination against the plaintiff. Quite to the contrary, the plaintiff received such written accolades as "is very conscientious in her duty and has earned the respect of all officers of this department". This having been written by the Police Chief to the Alderman who was Chairman of the Police & Health Committee when it was first requested that the plaintiff be allowed to work the double shift.

Therefore, other than for minor differences, the facts are not in dispute.

The plaintiff brings this appeal asserting that the court below erred in two particulars. First, that the case should have been decided in favor of the plaintiff based on the facts presented; and second, that the fourteenth amendment of the United States Constitution prohibits State officials from using race as a criteria for taking, or in this case, not taking action.

■■ Plaintiff's counsel has prepared an excellent brief and we have been greatly aided by the brief in our consideration of the issues herein presented. The City has not filed a brief and thus we have considered reversing the court below because of the failure of the City to file a brief. However, after due deliberation, the ends of justice would in this case not have been served by our so doing. *Metcoff v. Metcoff*, 4 Ill.App.3d 160, 280 N.E.2d 572; *Vesely v. Prestige Casualty Co.*, 4 Ill.App.3d 726, 281 N.E.2d 724.

■■■ The general rule of law is clear with respect to overtime compensation for municipal employees.

8 Illinois Law and Practice, paragraph 301:

"In the absence of a valid ordinance or agreement providing for additional pay, a municipal employee cannot recover compensation for work done outside his regular hours of employment or for work done outside the scope of his duties."

62 C.J.S. 1463, paragraph 720(b):

"IN THE ABSENCE OF A STATUTE PROVIDING OTHER-

WISE OR OF AN AGREEMENT TO PAY, A MUNICIPAL EM-
PLOYEE CANNOT RECOVER COMPENSATION FOR WORK
DONE OUTSIDE HIS REGULAR HOURS OF EMPLOYMENT
OR OUTSIDE HIS REGULAR DUTIES.

A municipal corporation may properly agree to pay an employee
additional money for additional work unless such payment is pro-
hibited by ordinance. An employee of a municipality cannot re-
cover compensation for work done outside his regular hours of
employment or for work done outside the scope of his regu-
lar duties unless there was an agreement by the municipal au-
thorities to make compensation at such extra time or for such
extra services or unless a statute or charter provisions requires
extra pay for overtime work."

Plaintiff contends that the facts of her situation differ from the above
in the following particulars; she is seeking to recover only the one-half
premium pay and not the "overtime"; she did not "volunteer" to work the
second shift but was requested by the City to work the extra shift; and
she made "immediate" request for payment when she determined that
other City employees were being paid time and a half for overtime.

We have reviewed the cases cited by the plaintiff and cannot agree
that they support her contentions. As the plaintiff points out, the Illinois
cases on this issue stress that governmental control over expenditures is
a necessity.

The fact that the Mayor offered to pay the plaintiff for the period of
from June, 1968, to October, 1968, is not controlling of the City's re-
sponsibility so to do. This offer of payment may well have been in the
nature of a settlement offer which is not an admission of liability.

In the case of *Mitchell v. City of Chicago*, 259 Ill.App. 301, the plaintiff
claimed overtime compensation for 5,385¾ hours of overtime services
which he had rendered during a period of over four years. He had made
no claim for compensation while employed by the City but only did so a
year after he left the City's employment.

The evidence of *Mitchell* reveals that the plaintiff worked from
4:00 P.M. till 6:00 A.M. seven days a week. He had been told by the
union that it was attempting to get an eight hour schedule for the plain-
tiff. The court reversed the trial court's findings for the plaintiff. The
language of *Mitchell* is particularly appropriate to the case at hand. At
page 303 "The facts of this case clearly indicate that it was not contem-
plated by the parties that the plaintiff was to be paid for time in excess
of eight hours of work. The plaintiff voluntarily worked more than eight
hours a day, *accepted the pay*, and at no time during the four years or

more of service, claimed pay, or made demand for pay for the extra time." (Emphasis ours.) The plaintiff urges that the case is distinguishable because the present plaintiff received straight time for extra hours. We find that the determining point is that neither the plaintiff nor the City contemplated overtime and it was not part of any employment agreement. As the court states in the *Mitchell* case at page 304, "In this case it is clear that extra compensation was not contemplated by either party." See also *Sanitary Dist. of Chicago v. Burke,* 88 Ill.App. 196.

The other cases cited by the plaintiff do not support her contention and indeed the plaintiff's brief only cites the cases so that she may distinguish them. The plaintiff has not cited any authority for the assertion which may be paraphrased as: The plaintiff is entitled to overtime because she worked the hours at straight time and other City employees in other departments received overtime pay in spite of the fact neither she nor the employer contemplated overtime.

■■ The second contention of the plaintiff is that she was denied equal protection of the laws as provided by the fourteenth amendment and that the record suggests race was or may have been used as a criteria in determining whether to act favorably on her claim. *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, is cited in support of such contention. There the Court found that application of a Texas statutory scheme resulted in a practical elimination of those of the defendant's race from the grand jury and held that, "If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand." Here the record would not support a finding of discrimination and there is a plethora of evidence that plaintiff did not receive discriminatory treatment. The findings of the trial court will not be disturbed as they are not against the manifest weight of the evidence.

The judgment of the trial court is affirmed.